(Not for publication) (Docket Entry No. 11)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                    :
VERNON CARMEN and                   :
TARSHA CARMEN,                      :
                                    :
            Plaintiffs,             :     Civil No.  08-2729 (RBK/JS)
                                    :
       v.                           :     **OPINION**
                                    :
METROCITIES MORTGAGE CORP.,         :
et al.,                             :
                                    :
            Defendants.             :
_____ :

      This action arises out of the refinancing of Plaintiffs' mortgage.  Plaintiffs Vernon and Tarsha Carmen bring this action against Metrocities Mortgage Corporation ("Metrocities"), GMAC Mortgage Corporation ("GMAC"), Joshua Tuschak, and Countrywide Home Loans, Inc. ("Countrywide").  Presently before the Court is a motion by Countrywide to dismiss Plaintiffs' Amended Complaint.  For the reasons set forth below, Countrywide's motion will be granted.  However, only Plaintiffs' common law claims against Countrywide will be dismissed with prejudice.  The remaining claims against Countrywide in Plaintiffs' Amended Complaint will be dismissed without prejudice, and Plaintiffs may file an amended complaint correcting the deficiencies identified in this Opinion within fourteen days of the date of this Opinion.

I. BACKGROUND

    A. Allegations in the Amended Complaint

In March 2007, Plaintiffs refinanced the mortgage on their home through Metrocities. Plaintiffs claim that they detrimentally relied on representations about the loan made by mortgage broker Joshua Tuschak, an officer or member of Metrocities. Plaintiffs allege that Tuschak falsely represented that the loan would contain "the best possible terms for Plaintiffs," and would be "affordable to Plaintiffs, in their best interests, and would, in fact, improve Plaintiffs' socioeconomic situation." (Amended Complaint at ¶¶ 30-31).

Plaintiffs further allege that Metrocities agreed to pay Tuschak a fee known as a "Yield Spread Premium," and that this fee was not disclosed to Plaintiffs. According to Plaintiffs, this Yield Spread Premium ("YSP") artificially increased the terms of the loan. Plaintiffs allege that the YSP and the loan application that Tuschak submitted to Metrocities were either never shown to Plaintiffs or not shown to Plaintiffs until the closing, at which time they were "intentionally concealed within the morass of loan documents" Plaintiffs were asked to execute. (Amended Complaint at ¶ 37.) In addition, Plaintiffs allege that other fees were not properly disclosed. These fees include the "appraisal fee, title insurance premium, lien, judgment and/or prior mortgage payments and other 'closing costs' (such as, application, document preparation, recording, notary, courier, wire, and/or mailing fees)." (Amended Complaint at ¶ 39.) Plaintiffs also allege that Metrocities and Tuschak never recorded the mortgage, and asked Plaintiffs to back date the mortgage.

In May 2007, Metrocities assigned Plaintiffs' mortgage to Countrywide. Plaintiffs allege that the defendants violated "their fiduciary, contractual, and legal duties," by failing to do the

following:

>  properly and timely record assignments; attribute loan payments toward principle [sic] and interest (and taxes and insurance, if applicable); calculate monthly and/or pay-off payment pursuant to the terms of the Loan; assess *bona fide* and/or *reasonable* charges (such as, forced placed insurance, escrow delinquencies, private mortgage insurance, and otherwise); and/or submit notices thereof to Plaintiffs.

(Amended Complaint at ¶ 44.)  As to Countrywide specifically, Plaintiffs allege that after the assignment, Countrywide demanded a mortgage payment for May 2007, which Plaintiffs had already paid.  In response, Plaintiffs made two additional mortgage payments.  Plaintiffs also allege that Countrywide improperly demanded an additional mortgage insurance payment, even though this cost was included in the mortgage payments Plaintiffs had made.  Countrywide later reported an arrearage to credit reporting agencies.

    **B.  Procedural History**

Plaintiffs filed this action on June 2, 2008, claiming that the defendants violated the Truth-in-Lending Act ("TILA"), the Home Ownership and Equity Protection Act ("HOEPA"), the Real Estate Settlement Procedures Act ("RESPA"), the Equal Credit Opportunity Act ("ECOA"); the Fair Credit Reporting Act ("FCRA"), the Fair Debt Collection Practices Act ("FDCPA"), and the Racketeer Influenced and Corrupt Organizations Act ("RICO").  In addition, Plaintiffs asserted claims of fraud and fraudulent misrepresentation; breach of contract and warranty; negligence, negligent misrepresentation and improvident (negligent) lending; breach of the covenant of good faith and fair dealing; breach of fiduciary duty; and conspiracy, acting in concert and aiding and abetting.  After Defendants Countrywide and GMAC filed motions to dismiss, Plaintiffs amended their Complaint.  In the Amended Complaint, Plaintiffs continue to

claim that the defendants violated the TILA, the HOEPA and the RESPA. In addition, Plaintiffs claim that the defendants violated the New Jersey Consumer Fraud Act ("NJCFA"). Plaintiffs' Amended Complaint also contains claims of fraud and fraudulent misrepresentation; breach of contract; negligence and negligent misrepresentation; breach of fiduciary duty; and conspiracy, acting in concert and aiding and abetting.

On September 30, 2008, Countrywide filed the instant motion, seeking to dismiss Plaintiffs' Amended Complaint in its entirety. Countrywide argues that Plaintiffs' TILA and HOEPA claims for damages, as well as Plaintiffs' RESPA claim, are barred by the statute of limitations. Countrywide further argues that Plaintiffs have failed to state a claim for violation of each of these statutes, for violation of the NJCFA, and for their common law claims.

## II.  STANDARD FOR 12(b)(6) MOTION[1]

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a 12(b)(6) motion, the Court must "accept all factual allegations [in the complaint] as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002). However, the complaint must do more than

---

[1] The Court interprets Countrywide's motion to dismiss on the basis of the statute of limitations as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). See Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (stating statute of limitations defense may be raised in 12(b)(6) motion if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations" (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)). Thus, the 12(b)(6) standard applies to all of Countrywide's arguments.

"allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007)).

"[E]ven when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Id. at 236.

## III. DISCUSSION

### A. Statute of Limitations (TILA, HOEPA, and RESPA)

Countrywide argues that Plaintiffs' TILA and HOEPA claims for damages, as well as their RESPA claim, are barred by a one-year statute of limitations. See 15 U.S.C. § 1640(e) (2006) (providing one-year statute of limitations for TILA and HOEPA damages actions)[2]; 12 U.S.C. § 2614 (2006) (providing one-year statute of limitations for RESPA claims alleging fee splitting).[3] The statute of limitations begins to run when the contract is executed. See Bartholomew v. Northampton Nat'l Bank of Easton, 584 F.2d 1288, 1296 (3d Cir. 1978) (finding

---

[2] The statute of limitations for TILA actions seeking rescission is three years. See 15 U.S.C. § 1635(f).

[3] To the extent that Plaintiffs have made a claim that defendants violated 12 U.S.C. § 2605 by failing to respond to Plaintiffs' "qualified written request" for information about the servicing of their loan, the statute of limitations for this claim is three years. See 12 U.S.C. § 2614. In addition, Plaintiffs point out that the one-year statute of limitations does not apply to actions for recoupment. However, Plaintiffs' claims are not for recoupment. See Black's Law Dictionary 1302 (8th ed. 2004) (defining recoupment as "[r]eduction of a plaintiff's damages because of a demand by the defendant arising out of the same transaction").

TILA statute of limitations "begins to run on the date that a contract to sell land is executed"); Oldroyd v. Assocs. Consumer Discount Co., 863 F. Supp. 237, 240 (E.D. Pa. 1994) (finding statute of limitations began to run on disclosure claims when loan was refinanced).

Here, Plaintiffs filed their complaint more than one year after the closing. Plaintiffs argue, however, that the statute of limitations has not yet begun to run because the mortgage was not recorded. Plaintiffs do not cite any authority to support this argument, and the case law indicates that the date the mortgage was recorded does not determine when the statute of limitations begins to run. See Bartholomew, 584 F.2d at 1296; Oldroyd, 863 F. Supp. at 240.

In the alternative, Plaintiffs argue that the statute of limitations is equitably tolled based on the defendants' fraudulent concealment. In order to invoke fraudulent concealment as a basis for equitable tolling, Plaintiffs must show the following elements: "(1) that the defendant actively misled the plaintiff[s]; (2) which prevented the plaintiff[s] from recognizing the validity of [their] claim within the limitations period; and (3) where the [plaintiffs'] ignorance is not attributable to [their] lack of reasonable due diligence in attempting to uncover the relevant facts." Cetel v. Kirwan Financial Group, Inc., 460 F.3d 494, 509 (3d Cir. 2006). "To avoid dismissal, a complaint asserting equitable tolling must contain particularized allegations that the defendant 'actively misled' plaintiff." Iwanowa v. Ford Motor Co., 67 F. Supp. 2d 424, 467 (D.N.J. 1999) (citing 287 Corporate Ctr. Assocs. v. Township of Bridgewater, 101 F.3d 320, 325 (3d Cir.1996); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir.1994)).

Plaintiffs argue that the defendants concealed their TILA, HOEPA and RESPA violations, which were not discoverable until Metrocities contacted Plaintiffs in 2008. Plaintiffs state that in January 2008 Metrocities, for the first time, sent Plaintiffs their closing documents.

6

Further, Plaintiffs state that in May 2008, Metrocities informed them that their mortgage had never been recorded and asked them to back date it and return it for recording. Plaintiffs fail to explain, however, how the defendants' alleged TILA , HOEPA and RESPA violations were actively concealed in a way that prevented Plaintiffs from discovering them until 2008.[4] Therefore, Countrywide's motion to dismiss will be granted with respect to Plaintiffs' TILA and HOEPA claims for damages and Plaintiffs' RESPA fee-splitting claim; however, Plaintiffs may file an amended complaint within fourteen days that states specifically how each element of fraudulent concealment applies in this case.

### B. Failure to State a TILA Claim

Countrywide argues that, to the extent Plaintiffs' TILA claim is not barred by the statute of limitations, it should be dismissed for failure to state a claim. Specifically, Countrywide argues that Plaintiffs "completely fail . . . to provide any details in support of [their] allegations." However, Plaintiffs are not required to provide details in their complaint.

> [A] plaintiff need not plead facts. To withstand a 12(b)(6) motion, a plaintiff need only make out a claim upon which relief can be granted. If more facts are necessary to resolve or clarify the disputed issues, the parties may avail themselves of the civil discovery mechanisms under the Federal Rules.

Alston, 363 F.3d at 233-34 n.6. Plaintiffs allege that the defendants violated the TILA and the HOEPA by:

> (a) Failing to properly and accurately disclose the "amount financed," described in and in violation of Regulation Z § 226.18(b) and 15 U.S.C. § 1638(a)(2)(A);
> (b) Failing to clearly and accurately disclose the "finance charge," described in

---

[4] To the extent Plaintiffs rely on Tuschak's representations that the loan would be "at the best possible terms for Plaintiffs" and would be "affordable to Plaintiffs, in their best interest, and would, in fact, improve Plaintiffs' socio-economic situation," the Court finds that these representations do not constitute active concealment.

and in violation of Regulation Z § 226.4 and 15 U.S.C. § 1638(a)(3);
(c) Failing to clearly and accurately disclose the "annual percentage rate," described in and in violation of Regulation Z § 226.18(e) and 15 U.S.C. § 1638(a)(4);
(d) Failing to comply with the special disclosure requirements of Regulation Z § 226.32; and/or
(e) Failing to timely provide each Plaintiff with two (2) copies of a Notice of his/her Rights to Rescind the Transaction and/or one (1) copy each of the form Disclosure pursuant to TILA and/or HOEPA.

(Amended Complaint at ¶ 56.) The Court finds that these allegations are sufficient to state a claim under the TILA.

### C. Assignee Liability under the TILA[5]

Countrywide argues that it is not subject to liability under the TILA because Plaintiffs have failed to plead the circumstances necessary to invoke assignee liability under the TILA. The parties disagree about the applicable standard. Plaintiffs argue that Countrywide is liable as an assignee pursuant to the FTC Holder Rule. See 16 C.F.R. § 433.2 (requiring seller to provide notice that "ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF"). Plaintiffs also argue that Countrywide can be held liable as an assignee under common law. However, assignee liability in TILA cases is governed by the TILA assignee liability provision. See Ramadan v. Chase Manhattan Corp., 229 F.3d 194, 202-03 (3d

---

[5] Countrywide did not raise the issue of assignee liability under the TILA in its initial brief in support of its motion to dismiss. Ordinarily, courts will not consider arguments a party fails to raise in its initial brief in support of a motion. See Bayer AG v. Schein Pharm., Inc., 129 F. Supp. 2d 705, 716 (D.N.J. 2001) (explaining that party opposing motion has no opportunity to respond to claim raised for first time in reply brief). However, Plaintiffs raised the issue of assignee liability under the TILA in their opposition brief and had an opportunity to respond to Countrywide's arguments in their rebuttal memorandum.

Cir. 2000) ("The FTC-required Holder Notice cannot trump the TILA's assignee liability mandates."). This provision states:

> Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter or proceeding under section 1607 of this title which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary.

15 U.S.C. § 1641(a).[6]  In their complaint, Plaintiffs do not state whether the TILA violations they allege were "apparent on the face of the disclosure statement." Again, although the complaint is deficient, the Court will allow Plaintiffs to amend their complaint to explain whether any of the alleged TILA violations were apparent on the face of the disclosure statement.

### D. Failure to State a Claim for Violation of the HOEPA

Countrywide also argues that, to the extent Plaintiff's HOEPA claim is not barred by the statute of limitations, it should be dismissed for failure to state a claim. Specifically, Countrywide argues that Plaintiffs must establish that the mortgage was a "high rate loan." See 15 U.S.C. § 1602(aa)(1) (describing types of loans to which HOEPA applies). In the Amended Complaint, Plaintiffs state: "The Loan was a high rate mortgage within the meaning of 15 U.S.C. § 1602(aa)(1)(B) in that the total points and fees Defendants charged Plaintiff, in addition to interest, exceeded eight percent of the total loan amount or in that the APR trigger pursuant to HOEPA was met with respect to this transaction." (Amended Complaint at ¶ 59.) Countrywide argues that this allegation does not provide sufficient information to show that by applying the

---

[6] This limitation on assignee liability does not apply where plaintiffs seek rescission of the contract. See 15 U.S.C. § 1641(c) ("Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation.").

9

appropriate regulatory formula,[7] Plaintiffs can demonstrate that the mortgage was in fact a high rate mortgage. The Court finds that this level of detail is not required in the complaint. Countrywide may seek the facts it needs through discovery.

### E. Failure to State a Claim for Violation of the RESPA

Countrywide argues that Plaintiffs have failed to state a claim against it for violation of the RESPA because Plaintiffs do not allege that Countrywide committed any act prohibited by the RESPA.[8] Plaintiffs claim that the defendants violated the "fee splitting" provision of the RESPA. See 12 U.S.C. § 2607(b) ("No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed."). Plaintiffs argue that Countrywide can be held liable as an assignee pursuant to common law and the FTC Holder Rule. Plaintiffs further argue that "as the loan is to be recorded post-assignment and Countrywide contends RESPA commensurate with recording (closing), then by necessary implication, Countrywide is RESPA violative." (Pls.' Opposition Brief at 11.)

First, the Court finds that the delay in recording the mortgage does not affect

---

[7] The items included in "points and fees" are listed at 12 C.F.R. § 226.32(b)(1). "[T]he total loan amount is calculated by taking the amount financed, as determined according to § 226.18(b), and deducting any cost listed in § 226.32(b)(1)(iii) and § 226.32(b)(1)(iv) that is both included as points and fees under § 226.32(b)(1) and financed by the creditor." 12 C.F.R. Pt. 226, Supp I.

[8] In its reply brief, Countrywide raises an additional argument in support of its motion to dismiss: the facts alleged by Plaintiffs do not give rise to a cause of action for fee-splitting because Plaintiffs have not alleged that the defendants received money for services that were not performed. The Court will not address this argument, however, because Countrywide raised it for the first time in its reply brief.

Countrywide's liability. Plaintiffs have not made any allegation that Countrywide gave or accepted any part of a charge that was assessed Plaintiffs in connection with the closing. Thus, Plaintiffs have failed to articulate any basis for holding Countrywide liable for directly violating the fee-splitting provision of the RESPA.

Second, the Court finds that Countrywide can be held liable under the RESPA based on its assignee status. While the parties have not cited any case that addresses the issue, and this Court has been unable to find any opinion in which a court decides the issue, one court has noted that "[t]he RESPA Regulations define a 'lender' as a secured creditor 'named in the debt obligation and document creating the loan.'" In re Murray, 239 B.R. 728, 736 (Bankr. E.D. Pa. 1999) (quoting 24 C.F.R. § 3500.2(b)). "This definition would not include . . . a subsequent assignee." In re Murray, 239 B.R. at 736. The Murray court also noted that where the loan at issue is a "high rate loan" to which the HOEPA applies, 15 U.S.C. § 1641(d)(1)[9] could support an argument that assignees can be liable for the original lender's RESPA violation. See id. (expressing doubt "that § 1641(d)(1) could ever sweep such liability onto an assignee," but not deciding issue). The Murray court, however, did not address whether an assignee could be held

---

[9] This provision provides, in relevant part:

> Any person who purchases or is otherwise assigned a mortgage referred to in section 1602(aa) of this title shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage, unless the purchaser or assignee demonstrates, by a preponderance of the evidence, that a reasonable person exercising ordinary due diligence, could not determine, based on the documentation required by this subchapter, the itemization of the amount financed, and other disclosure of disbursements that the mortgage was a mortgage referred to in section 1602(aa) of this title.

15 U.S.C. § 1641(d)(1).

liable for a RESPA violation pursuant to the FTC Holder Rule. The RESPA, unlike the TILA, does not have a specific provision limiting assignee liability. Therefore, the Court finds that an assignee may be held liable under the RESPA pursuant to the FTC Holder Rule. Cf. Irby-Greene v. M.O.R., Inc., 79 F. Supp. 2d 630, 634-36 (E.D. Va. 2000) (finding assignee could be held liable under Odometer Act, which does not establish assignee liability, pursuant to FTC Holder Rule).

**F. Failure to State a Claim for Violation of the NJCFA**

Defendants argue that Plaintiffs' NJCFA claim should be dismissed because Countrywide did not participate in the origination or closing of the loan. Plaintiffs argue that Countrywide, as an assignee, can be held liable for the failure to make required disclosures and fee-splitting. Further, Plaintiffs argue that Countrywide can be held liable under the NJCFA for its own wrongful collection, credit defamation, and improper servicing.

The NJCFA prohibits the following conduct:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid . . . .

N.J. Stat. Ann. § 56:8-2 (West 2001). Assignees may be held liable under the NJCFA for their own subsequent performance of the contract, and, in some cases, for the original seller's conduct. See Jefferson Loan Co., Inc. v. Session, 938 A.2d 169, 177 (N.J. Super. Ct. App. Div. 2008) ("We conclude that an assignee of a RISC can be held liable under the CFA, for its own unconscionable commercial activities in the subsequent performance of the assigned contract.");

cf. Psensky v. Am. Honda Finance Corp., 875 A.2d 290, 293 (N.J. Super. Ct. App. Div. 2005) (noting that "New Jersey's holder law broadly subjects assignees to any liability claim that can be asserted against the [seller]"). However, assignee liability under the NJCFA for violations of the TILA is limited. An assignee can be held liable under the NJCFA for the original lender's failure to make disclosures at the closing only to the extent that the assignee could be held liable under the TILA. See Psensky, 875 A.2d at 296 (finding that "compliance with the TILA is a complete defense" to NJCFA claims against assignee). Because the Court has permitted Plaintiffs to amend their complaint to show that assignee liability under the TILA is appropriate in this case, it is possible that Plaintiffs will be able to establish that assignee liability under the NJCFA for the TILA violations is appropriate. Furthermore, Countrywide may be liable as an assignee for any acts alleged to have violated the HOEPA, which contains a broad assignee liability provision. See 15 U.S.C. § 1641(d). Finally, Countrywide may be held liable as an assignee for a RESPA fee-splitting violation, and therefore may also be held liable under the NJCFA for any such violation.

As to Countrywide's liability under the NJCFA for its own misconduct, the Court finds that the misconduct described by Plaintiffs does not give rise to a NJCFA claim. Plaintiffs' allegations that Countrywide demanded excess payments may support a breach of contract claim, but a mere breach of contract does not violate the NJCFA. See Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994) (finding breach of contract without "substantial aggravating circumstances" is not a violation of NJCFA). Furthermore, Plaintiffs' allegation of credit defamation, which is separate from Countrywide's performance under the contract, does not give rise to a NJCFA claim.

13

Although it is possible that Plaintiffs will be able to pursue NJCFA claims against Countrywide based on Countrywide's assignee status, the Court finds that Plaintiffs' NJCFA allegations are insufficient. In their Amended Complaint, Plaintiffs merely state, "[a]t all times material, the closing(s) above described, constituted a 'sale' of the aforesaid premises as that term is defined by the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1, et seq. ("NJCFA"), which Defendants are in violation and liable therefore to Plaintiffs." (Amended Complaint at ¶ 64.) The Court will allow Plaintiffs to amend their complaint to explain how each defendant violated the NJCFA. Plaintiffs should note that the elements of a NJCFA claim are "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." Bosland v. Warnock Dodge, Inc., 964 A.2d 741, 749 (N.J. 2009). Further, where claims are based on omissions, intent is an additional element. Cox, 647 A.2d at 462.

### G. Failure to State a Claim for Common Law Claims

Countrywide argues that Plaintiffs' common law claims must be dismissed because the Amended Complaint simply lists them "without any application of the facts or recitation of any legal elements." (Countrywide's Brief in Support of Motion to Dismiss at 11.) After Countrywide filed this motion, Plaintiffs conceded withdrawal of all of their common law causes of action against Countrywide. Therefore, Plaintiffs' common law claims will be dismissed with prejudice.

## IV. CONCLUSION

For the foregoing reasons, Countrywide's motion to dismiss is granted, but Plaintiffs' TILA, HOEPA, RESPA and NJCFA claims will be dismissed without prejudice, and Plaintiffs

will be given fourteen days to file amended complaint.   An accompanying order shall issue today.


Dated: 5-18-09                                              /s/ Robert B. Kugler
                                                            ROBERT B. KUGLER
                                                            United States District Judge