NOT FOR PUBLICATION                                                    (Docket No. 39, 40)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                          :
VERNON CARMEN and TARSHA                  :
CARMEN,                                   :
                                          :
          Plaintiffs,                     :     Civil No. 08-2729 (RBK/KMW)
                                          :
    v.                                    :     **OPINION**
                                          :
METROCITIES MORTGAGE, JOSHUA               :
TUSCHAK, GMAC MORTGAGE CORP.,              :
COUNTRYWIDE HOME LOANS, INC.,              :
and JOHN DOES 1-10,                       :
                                          :
          Defendants.                     :
_____       :

**KUGLER**, United States District Judge:

      This matter arises out of alleged abuses from the refinancing and servicing of a home mortgage. Presently before the Court is Defendant Countrywide Home Loans, Inc.'s Motion to Dismiss (Docket No. 39) and GMAC Mortgage Corp.'s Motion to Dismiss (Docket No. 40). This is the second time this dispute has been before the Court on a motion to dismiss, the Court having previously granted Countrywide's motion and granted Plaintiffs leave to amend. See Carmen v. Metrocities Mortg. Corp., No. 08-2729, 2009 WL 1416038 (D.N.J. May 18, 2009). Because the Court finds that Plaintiffs have still failed to state a claim, the pending Motions are granted.

1

**I.        BACKGROUND**

Since the underlying operative facts have not changed, the following is a recitation of the facts from the Court's previous Opinion, with slight modifications for new allegations and the subsequent procedural history.

In March 2007, Plaintiffs refinanced the mortgage on their home through Metrocities. Plaintiffs claim that they detrimentally relied on representations about the loan made by mortgage broker Joshua Tuschak, an officer or member of Metrocities. Plaintiffs allege that Tuschak falsely represented that the loan would contain "the best possible terms for Plaintiffs," and would be "affordable to Plaintiffs, in their best interests, and would, in fact, improve Plaintiffs' socioeconomic situation." Second Amd. Compl. at ¶¶ 43, 44.

Plaintiffs further allege that Metrocities agreed to pay Tuschak a fee known as a "Yield Spread Premium," and that this fee was not disclosed to Plaintiffs. According to Plaintiffs, this Yield Spread Premium (YSP) artificially increased the terms of the loan. Plaintiffs allege that the YSP and the loan application that Tuschak submitted to Metrocities were either never shown to Plaintiffs or not shown to Plaintiffs until the closing, at which time they were "intentionally concealed within the morass of loan documents" Plaintiffs were asked to execute. Second Amd. Compl. at ¶ 50. In addition, Plaintiffs allege that other fees were not properly disclosed. These fees include the "appraisal fee, title insurance premium, lien, judgment and/or prior mortgage payments and other 'closing costs' (such as, application, document preparation, recording, notary, courier, wire, and/or mailing fees)." Second Amd. Compl. at ¶ 52. Plaintiffs also allege that Metrocities and Tuschak never recorded the mortgage, and asked Plaintiffs to back date the mortgage.

In May 2007, Plaintiffs' mortgage was sold to Countrywide. Plaintiffs allege that the Defendants violated "their fiduciary, contractual, and legal duties," by failing to do the following:

> properly and timely record assignments; attribute loan payments toward principle [sic] and interest (and taxes and insurance, if applicable); calculate monthly and/or pay-off payment pursuant to the terms of the Loan; assess *bona fide* and/or *reasonable* charges (such as, forced placed insurance, escrow delinquencies, private mortgage insurance, and otherwise); and/or submit notices thereof to Plaintiffs.

Second Amd. Compl. at ¶ 44.[1] As to Countrywide specifically, Plaintiffs allege that after the assignment, Countrywide demanded a mortgage payment for May 2007, which Plaintiffs had already paid to GMAC, the original servicer of the loan. In response, Plaintiffs made two additional mortgage payments. Plaintiffs also allege that Countrywide improperly demanded an additional private mortgage insurance (PMI) payment, even though this cost was included in the mortgage payments Plaintiffs were making. Plaintiffs further allege that Countrywide continues to collect an additional $200.00 a month in duplicate PMI. Countrywide later reported an arrearage to credit reporting agencies.

Plaintiffs filed this action on June 2, 2008, claiming that the Defendants violated the Truth-in-Lending Act (TILA), the Home Ownership and Equity Protection Act (HOEPA), the Real Estate Settlement Procedures Act (RESPA), the Equal Credit Opportunity Act (ECOA); the Fair Credit Reporting Act (FCRA), the Fair Debt Collection Practices Act (FDCPA), and the Racketeer Influenced and Corrupt Organizations Act (RICO). In addition, Plaintiffs asserted claims of fraud and fraudulent misrepresentation; breach of contract and warranty; negligence,

---

[1] The Second Amended Complaint is misnumbered in that the paragraphs number 1-54 and then start again at 42. See Second Amd. Compl. at 1-9, 10. The above referenced paragraph 44 appears at page 10 of the Second Amended Complaint.

negligent misrepresentation and improvident (negligent) lending; breach of the covenant of good faith and fair dealing; breach of fiduciary duty; and conspiracy, acting in concert and aiding and abetting. After Defendants Countrywide and GMAC filed motions to dismiss, Plaintiffs amended their Complaint. In the First Amended Complaint, Plaintiffs continued to claim that the Defendants violated the TILA, HOEPA and RESPA. In addition, Plaintiffs claimed that the defendants violated the New Jersey Consumer Fraud Act (NJCFA). The First Amended Complaint also contained claims of fraud and fraudulent misrepresentation; breach of contract; negligence and negligent misrepresentation; breach of fiduciary duty; and conspiracy, acting in concert and aiding and abetting.

On September 30, 2008, Countrywide filed a motion to dismiss, seeking to dismiss the First Amended Complaint in its entirety. Countrywide argued that Plaintiffs' TILA and HOEPA claims for damages, as well as Plaintiffs' RESPA claim, were barred by the statute of limitations. Countrywide further argued that Plaintiffs failed to state a claim.

In large part, the Court agreed with Countrywide's arguments and granted the motion to dismiss. The Court granted the motion with prejudice as to all of Plaintiffs' common law claims, but granted the motion without prejudice as to Plaintiff's remaining claims, granting Plaintiffs leave to amend. In particular, the Court granted Plaintiffs leave to amend to plead how their untimely TILA claims were revived by equitable tolling due to fraudulent concealment and to plead how each Defendant violated the NJCFA. See Carmen, 2009 WL 1416038, at *3, *7.

Plaintiffs filed the Second Amended Complaint on June 8, 2009. Plaintiffs once again alleged violations of TILA, HOEPA, RESPA, and the NJCFA, and added allegations regarding fraudulent concealment. Defendant Countrywide and Defendant GMAC moved to dismiss the

4

Second Amended Complaint on June 25 and June 26 respectively.  In their brief in opposition, Plaintiffs withdrew the bulk of their claims, limiting their allegations to the following three claims: (1) a TILA violation by Countrywide for statutory damages because of an alleged improper notice of right to rescission, Pl br. at 1, 5; (2) a TILA violation by Countrywide for rescission because of the alleged improper notice, Pl. br. at 1, 5; and (3) a NJCFA claim against Countrywide and GMAC for abusive servicing of the underlying loan.  Pl. br. at 1, 6.[2]  The parties have briefed the remaining issues and the Court now turns to a discussion of the merits of the remaining claims.[3]

## II.   STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted.  With a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to

---

[2] Because neither Countrywide nor GMAC opposed the withdrawal of Plaintiffs' other claims, they are now dismissed with prejudice.

[3] Along with his brief in support of the Motion to Dismiss, Brian Fleischer, counsel for GMAC, filed a "Certification of Counsel" attesting that "GMAC Mortgage played no role in the origination of the mortgage transaction process or with respect to the closing of the mortgage at issue," and attesting that "GMAC Mortgage serviced the mortgage and loan for less than two months."  Docket No. 40-4 at ¶¶ 2-3.  These statements, however, are not "within the personal knowledge" of Mr. Fleischer and are therefore inappropriate for the Certification.  See L. Civ. R. 7.2(a).  The Court will disregard these attestations and admonishes Counsel to limit his certifications to material within his personal knowledge.

relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In making this determination, a court must engage in a two part analysis. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11. First, the court must separate factual allegations from legal conclusions. Iqbal, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense." Id. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. See id.

### III. DISCUSSION

The Second Amended Complaint is a conundrum. At times it is unnecessarily wordy (and unclear) in light of Rule 8's requirement of a short and plain statement of the claim, and at times it is equally bereft of facts. Plaintiffs' supporting brief does nothing to further illuminate the claims as it cryptically – and largely without the support of any applicable law – describes what Plaintiffs actually allege and seek. It is from this thicket of bewildering pleading and briefing that the Court attempts to ascertain whether Plaintiffs have stated a plausible claim for relief.

The analysis begins with what Plaintiffs allege are the three remaining claims: (1) a TILA violation by Countrywide for statutory damages because of an alleged improper notice of right to rescission, Pl br. at 1, 5; (2) a TILA violation by Countrywide for rescission because of the alleged improper notice, Pl. br. at 1, 5; and (3) a NJCFA claim against Countrywide and

GMAC for abusive servicing of the underlying loan. Pl. br. at 1, 6. The review of these claims must be pursued in light of the previous Opinion, which granted Plaintiffs leave to amend as to specific claims.

### A.     TILA–Statutory Damages

Both Defendant Countrywide and Defendant GMAC argue that Plaintiffs' TILA claims for statutory damages are barred by the Act's one year statute of limitations. Countrywide br. at 8; GMAC br. at 5. Plaintiffs argue that their claim is not barred because of equitable tolling due to fraudulent concealment. Pl. br. at 5-6. The Court finds that Plaintiffs have failed to adequately plead equitable tolling.[4]

Before analyzing the limitations defense, a brief introduction to TILA is necessary. TILA's purpose is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601. Thus, TILA requires lenders to make specific disclosures to borrowers and provides a civil cause of action for violation of these disclosure requirements. See Ramadan v. Chase Manhattan Corp., 156 F.3d 499, 500 (3d Cir. 1998). A civil action for a TILA violation seeking statutory damages must be brought within one year of the violation. 15 U.S.C. § 1640(e). The limitations period begins to run when the underlying contract is executed. See Bartholomew v. Northampton Nat'l Bank of Easton, 584 F.2d 1288, 1296 (3d Cir. 1978); In re

---

[4] As an initial matter, the Court finds that the statute of limitations defense is appropriately raised here as it is clear on the face of the Second Amended Complaint that Plaintiffs' claim for TILA statutory damages is untimely. See Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt., 435 F.3d 396, 400 n. 14 (3d Cir. 2006).

Cmty. Bank of N. Virginia, 467 F. Supp. 2d 466, 475 (W.D. Pa. 2006); Oldroyd v. Assocs. Consumer Disc. Co., 863 F. Supp. 237, 240 (E.D. Pa. 1994). The limitations period, however, is subject to equitable tolling. Ramadan, 156 F.3d at 504.

A party claiming equitable tolling on the basis of fraudulent concealment must show "(1) that the defendant actively misled the plaintiff[s]; (2) which prevented the plaintiff[s] from recognizing the validity of [their] claim within the limitations period; and (3) where the [plaintiffs'] ignorance is not attributable to [their] lack of reasonable due diligence in attempting to uncover the relevant facts." Cetel v. Kirwan Fin. Group, Inc., 460 F.3d 494, 509 (3d Cir. 2006). "To avoid dismissal, a complaint asserting equitable tolling must contain particularized allegations that the defendant 'actively misled' plaintiff." Iwanowa v. Ford Motor Co., 67 F. Supp. 2d 424, 467 (D.N.J. 1999) (citing 287 Corporate Ctr. Assocs. v. Township of Bridgewater, 101 F.3d 320, 325 (3d Cir.1996); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir.1994)). Equitable tolling is "extraordinary relief," and as such is only granted "sparingly." Hedges v. United States, 404 F.3d 744, 751 (3d Cir. 2005).

Plaintiffs' entire remaining claim for TILA statutory damages appears based on a claim under Regulation Z. Second Amd. Compl. at ¶ 61; Pl. br. at 1-2. Under Regulation Z, in a closed credit transaction in which a security interest is acquired in the consumer's principal dwelling, the consumer has the right to rescind the transaction. 12 C.F.R. § 226.23(a)(1). In a transaction subject to rescission, the creditor is required to, among other things, deliver a notice stating the date on which the rescission period expires. § 226.23(b)(1)(v).

In the Second Amended Complaint, Plaintiffs seemingly claim that Metrocities provided an inaccurate date and are thus subject to statutory penalties (as is Countrywide as the assignee)

8

because they did not properly record the mortgage. Second Amd. Compl. at ¶¶ 34-38. They argue that the failure to record made the disclosed rescission date invalid. Pl. br. at 5.[5] Assuming that these allegations are true, and assuming that Countrywide is liable as the assignee, and assuming that Plaintiffs have pled sufficient facts to show a plausible claim for failure to disclose,[6] Plaintiffs' claim is barred as untimely.

As noted in the Court's previous Opinion, Plaintiffs were required to plead the elements of fraudulent concealment as outlined in Cetel v. Kirwan Financial Group, Inc., 460 F.3d 494, 509 (3d Cir. 2006) because their claim was filed beyond one year (their claim arising in March 2007). Carmen, 2009 WL 1416038, at *3. In response, Plaintiffs did in fact amend the First Amended Complaint, and significantly for purposes of this discussion, added an allegation of concealment at paragraph 39. Therein Plaintiffs pled as follows: "Plaintiffs were unable to discover these concealments as Metrocities actively mislead Plaintiffs into believing the mortgage was timely recorded which Metrocities advised Plaintiffs would occur immediately following closing, Metrocities kept all such documents, Plaintiffs could not have been aware

---

[5] "Plaintiffs allege Countrywide's TILA violation evident [sic] on the face to the Truth-in-Lending disclosure and notice(s) of right to rescind: the TIL [sic] disclosure and notice of right to rescind reflect a date and rescission eligibility date which incorrectly precede the mortgage's actual recording (rendering the notices defective)." Pl. br. at 5.

[6] An assumption as to which the Court harbors significant doubt. Cf. Payan v. Greenpoint Mortg. Funding, Inc., No. 08-6390, 2010 WL 99122, at *5 (D.N.J. Jan. 6, 2010) (granting judgment on the pleadings where complaint failed to disclose "which charges and fees were not properly disclosed"). For example, the Court has no idea what document was actually faulty, what date was purportedly on it, and, indeed, how a failure to timely record a mortgage actually make the original rescission date inaccurate. Cf. Countrywide reply br. at 5 ("The flaw in Plaintiffs' theory is that the right to rescind the mortgage does not begin and is not triggered by the date the mortgage is recorded."). As to the latter point, some caselaw or statutory authority would have been welcome, but Plaintiffs provided none.

otherwise, and Plaintiffs justifiably relied upon Metrocities [sic] misrepresentations, until Plaintiffs discovered otherwise." Second Amd. Compl. at ¶ 39.

Plaintiffs' allegations as to fraudulent concealment are faulty on two fronts. First, Plaintiffs have failed to distinguish between the original fraud/wrongdoing and the fraud in the concealment. Equitable tolling requires that the defendant affirmatively mislead the plaintiff into believing he has no cause of action. In re Elec. Carbon Prods. Antitrust Litig., 333 F. Supp. 2d 303, 316 (D.N.J. 2004) (citing Davis v. Grusemeyer, 996 F.2d 617, 624 (3d Cir. 1993)). Thus, the plaintiff must plead some act of concealment beyond the original act of wrongdoing. See In re Cmty. Bank, 467 F. Supp. 2d at 479 ("Restated, the fraudulent act(s) that provide the factual predicate for the claim, i.e. inaccurate loan documents, cannot also satisfy the factual predicate justifying equitable tolling."); Coveal v. Consumer Home Mortg., Inc., No. 04-4755, 2005 WL 704835, at *5 (E.D.N.Y. Mar. 29, 2005) ("Plaintiffs failed to satisfy their pleading burden to allege 'efforts by the defendant[s], above and beyond the wrongdoing upon which plaintiffs' claim is founded, to prevent, by fraud or deception, the plaintiff[s] for suing in time.'"). Here, Plaintiffs' only pleading as to concealment is the original wrongdoing itself – that is, the misstatement of the mortgage recording date, the statement that Metrocities would record, and the withholding of documents. But Plaintiffs were required to plead with specificity how Metrocities took some additional step to conceal the original fraud/misdeed. They have not done so. Plaintiffs have merely parroted the requirements for fraudulent concealment without any meaningful factual pleading to support the elements.

Second, even if Plaintiffs' allegations support active concealment, they have not pled how their ignorance of a claim is not attributable to their own lack of reasonable diligence. Indeed, on

10

this front, Plaintiffs only hollowly offer that they justifiably relied on Metrocities' representations that they would record the mortgage.  Second Amd. Compl. at ¶ 39.  The Court is not convinced that Metrocities' purported statement that they would timely record the mortgage somehow precluded Plaintiffs from discovering that in fact it had not been done.  See Coveal, 2005 WL 704835, at *5 (noting "'[t]he exercise of reasonable diligence is determined by examining the nature of the misleading statements alleged, the opportunity to discover the misleading nature of the statements, and the subsequent actions of the parties'").  Simply put, Plaintiffs have pled no facts that supports the extraordinary remedy of equitable tolling.

Therefore, the Court grants Countrywide's Motion as to Plaintiffs' claims for statutory damages.

      **B.**      **TILA–Rescission**

The limitations analysis above does not apply with equal force to Plaintiffs' claims for rescission under TILA.  In relevant part, a claim for rescission of a loan transaction must be brought within three years after the "consummation of the transaction" where information and forms required by TILA are not delivered by the creditor.  15 U.S.C. § 1635(f).  Neither of the moving parties meaningfully disputes that Plaintiffs' claim for rescission is subject to a three year tolling period.  Cf. Countrywide br. at 13 n.7 (discussing rescission but stating claim fails as a matter of law, not because the claim is untimely).  Thus, Plaintiffs' claim for rescission is not untimely.

Next, the Court must reject Countrywide's arguments regarding whether the alleged violation here was apparent on the face of the disclosure.  See Countrywide br. at 14-19.  The Court's discussion in the previous Opinion regarding this issue, see Carmen, 2009 WL 1416038,

at *4-5, is not relevant to Plaintiffs' claims for rescission. Plaintiffs' right of rescission against Metrocities extends to Countrywide as an assignee. See 15 U.S.C. § 1641(c) ("Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation."). This right extends *even if* the disclosure violation was not apparent on the face of the disclosure. Parker v. Potter, 232 Fed. Appx. 861, 865 (11th Cir. 2007). Thus, Countrywide's arguments do not support dismissing the Second Amended Complaint.

However, Countrywide's Motion must be granted on other grounds. Plaintiffs' essential argument in support of rescission is that because the mortgage was not immediately recorded, the disclosed date upon which Plaintiffs could rescind the transaction was invalid. See Pl. br. at 5; see also 12 C.F.R. § 226.23(b)(1)(v) (requiring creditor to disclose the "date rescission period expires"). Plaintiffs' argument is essentially that the date of "consummation of the transaction," see 15 U.S.C. § 1635(a), was not March 23, 2007, but was instead the date on which the mortgage was actually recorded – a date not provided in the Second Amended Complaint.

A creditor's obligation to make TILA disclosures is strictly enforced, meaning even a technical violation permits rescission. See Smith v. Fid. Consumer Disc. Co., 898 F.2d 896, 898 (3d Cir. 1990); Seldon v. Home Loan Servs., 647 F. Supp. 2d 451, 463 (E.D. Pa. 2009). One of these disclosure requirements is that a creditor must supply to the consumer the date upon which the consumer may rescind the transaction. § 226.23(b)(1)(v). This date is three days after "consummation of the transaction." § 1635(a). "Consummation" is defined as "the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13). In turn, "contractually obligated" is defined by state law. Jackson v. Grant, 890 F.2d 118, 120 (9th

12

Cir. 1989); see also Smith v. Fidelity Consumer Disc. Co., 898 F.2d 896, 902-03 (3d Cir. 1990) (noting date of consummation is date "a contractual relationship was created").  In New Jersey, the basic elements of a contract are offer, acceptance, and consideration.  Smith v. SBC Commc'ns Inc., 839 A.2d 850, 283 (N.J. 2004).

In this dispute, Plaintiffs' entire remaining claim for rescission is predicated on the idea that they did not consummate the transaction with Metrocities until the mortgage was recorded. Nevertheless, Plaintiffs supply no case law, nor is the Court aware of any, that supports that a contractual obligation does not arise under New Jersey law in these circumstances until a mortgage is recorded.  Cf. Countrywide reply br. at 5 ("The flaw in Plaintiffs' theory is that the right to rescind the mortgage does not begin and is not triggered by the date the mortgage is recorded.").  Thus, on the grounds upon which Plaintiffs have limited their claim, rescission is not available.

Therefore, the Court grants Countrywide's Motion as to Plaintiffs' claim for rescission.

### C. NJCFA

Plaintiffs' third claim is a NJCFA claim against Countrywide and GMAC respectively. These claims can be dismissed in short order.

As to GMAC, the only claim against them appears in paragraph 63 and alleges that they are liable for violations of TILA/HOEPA, RESPA and the FDCPA.  In Plaintiffs' brief in opposition to the Motions to Dismiss, Plaintiffs allege that GMAC is also liable under the NJCFA for "abusive servicing."  Pl. br. at 6.  However, the only allegations of abusive servicing appear in paragraph 64 of the Second Amended Complaint, and they are lodged only against Countrywide as the assignee.  Plaintiffs cannot use their brief to amend the Complaint.  See

Payan, 2010 99122, at *7 (citing cases). Thus, since Plaintiffs have not alleged a TILA violation against GMAC, and since Plaintiffs have otherwise abandoned their claims under HOEPA, RESPA and the FDCPA, the Court grants GMAC's Motion to Dismiss as to the NJCFA claim.[7]

As to Plaintiffs' claims against Countrywide, those too must fail. Plaintiffs' claim that Countrywide is liable for a TILA violation fails because they have not otherwise stated a viable TILA claim. See id. (dismissing NJCFA claim based on TILA violation as moot where plaintiffs TILA claims were otherwise dismissed). As to Plaintiffs' claims that Countrywide otherwise unlawfully over-collected PMI payments or commercially defamed the Plaintiffs, see Second Amd. Compl. at ¶ 64, those claims have already been considered and rejected by this Court in its previous Opinion. See Carmen, 2009 WL 1416038, at *7. Merely because Plaintiffs have recast these claims does not infuse them with viability.

Therefore, the Court grants Countrywide's Motion as to the NJCFA claims.

### D.     Leave to Amend

Normally with granted motions to dismiss, a reviewing court is otherwise compelled to grant the plaintiff leave to amend. See Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). However, the rule is not absolute: Leave to amend is inappropriate where it would cause undue delay, the amendment is motivated by bad faith or a dilatory motive, the amendment would cause prejudice, or the amendment is futile. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410,

---

[7] Even if Plaintiffs had actually pled a claim against GMAC for abusive servicing, that claim would fail under the NJCFA since it is essentially a basic breach of contract claim. See Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994) (finding breach of contract without "substantial aggravating circumstances" is not a violation of NJCFA).
Additionally, since the entirety of the Second Amended Complaint against GMAC has been dismissed, GMAC's cross claims, see Docket No. 14, are dismissed as moot.

1434 (3d Cir. 1997).

The Court finds that leave to amend should not be granted here because it would cause prejudice to Countrywide and GMAC and is otherwise futile. Plaintiffs have already had two opportunities to amend the underlying Complaint on the heels of pending or granted motions to dismiss. See Docket Nos. 5, 6, 8, 11, 38. Granting a third opportunity would border on absurd. Moreover, the bulk of Plaintiffs' claims are time barred or are otherwise invalid.

Therefore, the Court will not grant leave to amend.

**IV. CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Countrywide's Motion to Dismiss and **GRANTS** GMAC'S Motion to Dismiss.


Date: 2-1-10                                                                  /s/ Robert B. Kugler
                                                                              ROBERT B. KUGLER
                                                                              United States District Judge